UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

9  UNITED STATES OF AMERICA,

10             Plaintiff,                                                    No. CR 05-0046 MHP

11      v.

12  TOMAS GONZALEZ-RUIZ,                          **MEMORANDUM & ORDER**
                                                                         **Re: Defendant's Motion to Dismiss**
13             Defendant.

                                                                    /

14

15         On January 25, 2005, a grand jury indicted defendant Tomas Gonzalez-Ruiz on a single count of

16  illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326.  Now before the

17  court is defendant's motion to dismiss that indictment.  Having considered the parties' arguments and for

18  the reasons set forth below, the court enters the following memorandum and order.

19

20  BACKGROUND

21         The instant criminal action arises from a grand jury indictment charging defendant with a single count

22  of illegal reentry into the United States by an alien who has been previously denied admission, excluded,

23  deported, or removed from the United States.  See 8 U.S.C. § 1326(a).  In response to a motion filed by

24  defendant, the government has also filed a bill of particulars alleging that defendant has been deported to

25  Mexico on seven occasions during the period from January 1990 to June 2000.  On March 28, 2005,

26  defendant moved to dismiss the sole count charged in the indictment.  That motion is now before the court.

27

28  LEGAL STANDARD

1    Under Rule 12(b) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss

2    based on "any defense, objection, or request that the court can determine without a trial of the general

3    issue." Fed. R. Crim. P. 12(b); United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th

4    Cir.), cert. denied, 478 U.S. 1007 (1986). In considering a motion to dismiss, the court is limited to the

5    face of the indictment and must accept the facts alleged in that indictment as true. Winslow v. United

6    States, 216 F.2d 912, 913 (9th Cir.), cert. denied, 349 U.S. 922 (1955); United States v. Ruiz-Castro,

7    125 F. Supp. 2d 411, 413 (D. Haw. 2000). A court must decide such a motion before trial "unless it finds

8    good cause to defer a ruling." Fed. R. Crim. P. 12(d); Shortt Accountancy, 785 F.2d at 1452 (citing

9    former Fed. R. Crim. P. 12(e)).

10

11   DISCUSSION

12   I.    Failure to Allege Prior Aggravated Felony

13        Defendant first argues that the charge against him must be dismissed because the indictment fails to

14   allege that he has been previously convicted of an aggravated felony, a fact that would, if proven, increase

15   the maximum sentence of imprisonment to which defendant would be exposed from two years to twenty

16   years. Compare 8 U.S.C. § 1326(a) with 8 U.S.C. § 1326(b)(2). Defendant correctly notes that the

17   indictment is devoid of any mention of such a prior aggravated felony conviction. Nonetheless, based on

18   the charging sheet filed in this action, which indicates that defendant may be subject to a sentence of up to

19   twenty years imprisonment, it can be inferred that the government plans to introduce evidence of such a

20   conviction at sentencing. Citing the Supreme Court's recent decision in Shepard v. United States, __ U.S.

21   __, 125 S. Ct. 1254 (2005), defendant asserts that the failure to allege the fact of that prior conviction in

22   the indictment violates his Sixth Amendment right to have any fact that might increase his maximum sentence

23   pleaded in the indictment, presented to a jury, and proved beyond a reasonable doubt.

24        As Shepard's recent vintage suggests, the question presented by defendant's motion touches upon

25   a rapidly evolving area of constitutional law. Nonetheless, the court has little trouble concluding that

26   defendant's argument remains unambiguously foreclosed by Almendarez-Torres v. United States, 523 U.S.

27   224 (1998). In that case, the Supreme Court considered whether section 1326(b)(2)'s "recidivism"

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  requirement defines a separate crime, and thus must be pleaded in the indictment, or "simply authorizes an

2  enhanced penalty." Id. at 226, 228.  The Court unequivocally held that section 1326(b)(2) falls in the latter

3  category, rejecting the defendant's argument that Congress was constitutionally required to treat the fact of

4  recidivism as an element of the offense simply because it increased the maximum penalty to which the

5  defendant was exposed. Id. at 238-9.  Thus, as the Court subsequently observed in Jones v. United

6  States, 526 U.S. 227 (1999), Almendarez-Torres "stands for the proposition that not every fact expanding

7  a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the

8  maximum penalty need not be so charged." Id. at 248.

9      In United States v. Pacheco-Zepeda, 234 F.3d 411 (9th Cir.), cert. denied, 532 U.S. 966 (2001),

10  the Ninth Circuit reconsidered the holding of Almendarez-Torres in light of the Supreme Court's decision

11  in Apprendi v. New Jersey, 530 U.S. 466 (2000).  That landmark decision held that "[o]ther than the fact

12  of a prior conviction, any fact that increases the penalty for a crime beyond the proscribed statutory

13  maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  A corollary to

14  this rule, at least in federal prosecutions, is that every fact (other than the fact of a prior conviction) that

15  increases the maximum penalty to which a felony defendant is exposed must be alleged in the indictment.

16  See Jones, 526 U.S. at 243 & n.6.  Nonetheless, the Court expressly declined to overrule Almendarez-

17  Torres, instead preserving that case as a "narrow exception to the general rule" that Apprendi announced.

18  See id. at 488-90.  Thus, confronted with Apprendi's clearly expressed intent to preserve the holding of

19  Almendarez-Torres, the Pacheco-Zepeda court held that Almendarez-Torres' interpretation of section

20  1326(b)(2) continued to bind the courts of this Circuit. See 234 F.3d at 414.

21      The Ninth Circuit subsequently reaffirmed Pacheco-Zepeda's holding following the Supreme

22  Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004). See United States v.

23  Quintana-Quintana, 383 F.3d 1052, 1053 (9th Cir.), reh'g and reh'g en banc denied, 383 F.3d 1052 (9th

24  Cir. 2004), cert. denied, __ U.S. __, 125 S. Ct. 1100 (2005).  However, defendant now challenges the

25  continued vitality of Almendarez-Torres based on yet another Supreme Court decision extending

26  Apprendi's reach, arguing that the "mode of analysis" employed in the Supreme Court's recent Shepard

27  decision is "clearly irreconcilable" with Almendarez-Torres' recidivism exception. Def.'s Mem. P. & A. at

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1    4 (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).  The Shepard case involved

2    the application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which imposes a

3    fifteen-year mandatory minimum sentence on any person who, after having been previously convicted of a

4    "violent felony" on three separate occasions, is found guilty of the offense of being a felon in possession of a

5    firearm, 18 U.S.C. § 922(g)(1).  See Shepard, 125 S. Ct. at 1257.  After the defendant in Shepard had

6    pleaded guilty to the gun possession charge, the government introduced evidence of a prior burglary

7    conviction under a Massachusetts statute for the purpose of enhancing his sentence under the ACCA.  Id.

8    The difficulty in applying the ACCA under such circumstances arose from the Supreme Court's decision in

9    Taylor v. United States, 495 U.S. 575 (1990), in which the Court held that only "generic burglary"—that

10   is, an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a

11   crime"—qualifies as a "violent felony" under the APA.  495 U.S. at 599, 602.  However, the

12   Massachusetts burglary statute at issue in Shepard extended the definition of burglary to encompass the

13   unlawful entry into a boat or car in addition to a structure.  See 125 S. Ct. at 1257.  The government

14   nonetheless argued that the sentencing court could look beyond the facts alleged in the charging document

15   or admitted by the defendant for the purpose of establishing that the circumstances of the defendant's prior

16   conviction would have supported a conviction under a "generic burglary" statute and thus the imposition of

17   an enhanced sentence under the ACCA.  Id. at 1257.  The Court rejected this argument, concluding that

18   Apprendi prohibited such an inquiry where a finding that the defendant had committed "generic burglary"

19   would have the effect of increasing his sentence beyond the statutory maximum proscribed for violations of

20   section 922(g)(1).  Id. at 1262-63.

21         Were this court writing on a blank slate, it would certainly be willing to entertain defendant's

22   argument that Almendarez-Torres cannot be reconciled with Shepard.  However, it is not; indeed, the

23   Shepard Court took pains to distinguish Almendarez-Torres, observing that the disputed facts in the case

24   before it were simply "too far removed from the conclusive significance of a prior judicial record" to fall

25   within the exception for prior convictions carved out from the holding of Apprendi.  Shepard, 125 S. Ct. at

26   1262-63; see also Shepard, 125 S. Ct. at 1264 (Thomas, J., concurring) (noting that "this Court has not

27

28

4

1  yet reconsidered Almendarez-Torres"). Thus, this court is compelled to recognize Almendarez-Torres'

2  continued, albeit ever narrowing, precedential authority.

3      In short, defendant's Sixth Amendment claim comes before the court under the same circumstances

4  that the Ninth Circuit confronted in Pacheco-Zepeda, where, as noted above, the court rejected an

5  argument that Apprendi overruled Almendarez-Torres. See Pacheco-Zepeda, 234 F.3d at 414. In

6  reaching this conclusion, the court observed:

7      Because Apprendi preserves Almendarez-Torres as a 'narrow exception' to Apprendi's
       general rule, we can conclude, at most, that Apprendi casts doubt on the continuing viability
8      of Almendarez-Torres. If the views of the Supreme Court's individual Justices and the
       composition of the Court remain the same, Almendarez-Torres may eventually be
9      overruled. But such speculation does not permit us to ignore controlling Supreme Court
       authority. Unless and until Almendarez-Torres is overruled by the Supreme Court, we
10     must follow it.

11 Id. (footnote and citation omitted). That reasoning applies with equal force here. Accordingly, the court,

12 being bound by the holding of Almendarez-Torres, concludes that the fact of defendant's prior conviction

13 for an aggravated felony is not an element of the offense of illegal reentry into the United States after

14 deportation. Consequently, that fact need not be alleged in the indictment. The court therefore denies

15 defendant's motion to dismiss on that ground.

16 II.    Finding of Prior Deportability

17     Defendant next contends that the indictment must be dismissed because it implicitly relies on an

18 immigration judge's (or nonjudicial immigration officer's) finding that he was a deportable alien, thereby

19 violating his Sixth Amendment right to trial by jury. Defendant correctly points out that such a finding of

20 deportability may result in a "dramatic" increase in his sentence in that it allows him to be convicted for the

21 offense of illegal reentry into the United States under 8 U.S.C. § 1326 rather than the offense of illegal

22 entry in violation 8 U.S.C. § 1325(a). See Def.'s Mem. P. & A. at 6. While the latter carries a maximum

23 sentence of imprisonment of only two years, a defendant having a prior aggravated felony conviction and

24 found guilty under section 1326 may be imprisoned for up to twenty years. See 8 U.S.C. § 1326(b)(2).

25 Thus, defendant argues that Apprendi requires the fact of his prior deportability to be alleged in the

26 indictment.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

1    Defendant is of course correct in observing that under Apprendi, the additional element of prior

2    deportability that distinguishes the offense defined by section 1326 from that set forth in section 1325(a)

3    must be alleged in the indictment.  See Apprendi, 530 U.S. at 490; Jones, 526 U.S. at 243 & n.6.

4    Specifically, to convict defendant under section 1326, the government must prove, *inter alia*, that

5    defendant "has been denied admission, excluded, deported, or removed or has departed the United States

6    while an order of exclusion, deportation, or removal is outstanding."  8 U.S.C. § 1326(a).  There is no

7    doubt that proof of one of these facts may "convert the misdemeanor of unlawful entry into the felony of

8    unlawful entry after deportation," United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987), and

9    thus may increase the maximum sentence to which defendant is exposed from two years to twenty years.

10   However, it is also apparent that the instant indictment alleges that defendant has been "previously denied

11   admission, excluded, deported, and removed from the United States to Mexico."  Indictment at 1.  Thus,

12   contrary to defendant's assertion, there is nothing to suggest that the government has failed to allege any

13   fact necessary to support a conviction under section 1326.

14   Defendant nonetheless maintains that Apprendi prohibits the government's reliance on the findings

15   of an executive branch official to establish the fact of his deportability.  The error in this argument lies in

16   defendant's assumption that the government will bear the burden of proving at trial that defendant was

17   unlawfully deported.  This assumption is simply incorrect.  To prove unlawful reentry in violation of section

18   1326, the government need only show that: (1) the defendant is an alien; (2) that he or she was deported

19   and removed from the United States; and (3) that he or she voluntarily reentered and remained in the

20   United States without the consent of the Attorney General.  United States v. Gondinez-Rabadan, 289 F.3d

21   630, 633 (9th Cir. 2002) (citing United States v. Quintana-Torres, 235 F.3d 1197, 1199-1200 (9th Cir.

22   2000)), cert. denied, 537 U.S. 917 (2002).  Lawfulness of the prior deportation is not an element of the

23   offense defined by section 1326.  Mendoza-Lopez, 481 U.S. at 834-35; United States v.

24   Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc), cert. denied, 519 U.S. 1155 (1997).

25   Consequently, because the government is not required to establish that defendant's prior deportation was

26   lawful in order for him to be found guilty of the offense of illegal reentry, it necessarily follows that the Sixth

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Amendment does not require the lawfulness of the prior deportation order at issue to be determined by a jury.

2    Defendant maintains that United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001), requires the court

3    to hold otherwise. Like Shepard, Tighe involved the imposition of an enhanced sentence under the ACCA

4    based on a prior violent felony conviction under circumstances where the effect of the enhancement was to

5    increase the defendant's sentence beyond what otherwise would have been the statutory maximum penalty.

6    Id. at 1190. The district court had held that a prior juvenile conviction could serve as a predicate felony for

7    such an enhancement in spite of the fact that the defendant had no right to a jury trial in the juvenile court

8    proceedings. Id. Relying on Apprendi, the Ninth Circuit reversed, holding that a fact found in a nonjury

9    juvenile adjudication could not be used to increase the length of the defendant's sentence beyond what

10   would been supported by the facts alleged in the charging document. Id. at 1195.

11   While defendant argues that Tighe is indistinguishable from the case at bar, he overlooks one

12   fundamental difference between the two cases. In Tighe, the district court's constitutional error lay in its

13   reliance on the fact of a juvenile conviction as conclusive proof that the offense giving rise to that conviction

14   actually occurred. In contrast, here the government need only prove that defendant was found to be

15   deportable in order to convict him of the offense of illegal reentry; it need not establish that the findings

16   underlying that deportation order were factually correct. See Mendoza-Lopez, 481 U.S. at 834-35

17   (1987); Alvarado-Delgado, 98 F.3d at 493.[1]  Thus, because it is the fact of deportability rather than the

18   validity of the deportation order that gives rise to the possibility that defendant will be sentenced to up to

19   twenty years in prison, and because that fact is alleged in the indictment, defendant's reliance on Tighe is

20   unavailing. The court therefore denies defendant's motion to dismiss on that basis.

21   III.    Grand Jury Charging Instructions

22   Finally, defendant moves to dismiss the indictment on the ground that the instructions given to the

23   grand jury that returned a true bill against him violated the Fifth Amendment. Specifically, defendant

24   objects to a passage of the grand jury instructions informing the jurors that they may neither consider "the

25   wisdom of the criminal laws enacted by Congress" nor "the punishment provided by law for an offense

26   charged in the indictment" in determining whether a particular individual should be indicted. Def.'s Exh. A

27   at 11-12. According to defendant, such instructions, which are derived from the model charge

28

7

1  recommended by the Administrative Office of the United States Courts, vitiate the "traditional unfettered

2  discretion" of the grand jury to consider political and equitable considerations in deciding whether to return

3  a true bill and are thus incompatible with the Grand Jury Clause of the Fifth Amendment.  Def.'s Mem. P.

4  & A. at 10.

5       The court finds this argument to be without merit.  Virtually identical grand jury instructions have

6  been approved by the Ninth Circuit on four separate occasions.  See United States v. Rivera-Sillas, 376

7  F.3d 887, 893-94 (9th Cir. 2004); United States v. Navarro-Vargas, 367 F.3d 896, 898 (9th Cir.), reh'g

8  in banc granted and vacated by 382 F.3d 920 (9th Cir. 2004); United States v. Adams, 343 F.3d 1024,

9  1027 n.1 (9th Cir. 2003), cert. denied, __ U.S. __, 124 S. Ct. 2871 (2004), reh'g denied, __ U.S. __,

10 125 S. Ct. 18 (2004); United States v. Marcucci, 299 F.3d 1156, 1164 (9th Cir. 2002) (per curiam), cert.

11 denied, 538 U.S. 934 (2003).  Here too, defendant points out that the law in this area is somewhat

12 unsettled, as is evidenced by the Ninth Circuit's decision to grant en banc review of the panel decision in

13 Navarro-Vargas.  Once again, however, this court remains bound by the precedent of a higher court unless

14 or until the above-cited decisions are overruled by a Ninth Circuit en banc panel or by the Supreme Court.

15 Such precedent makes clear that the Administrative Office's model charge (and hence the grand jury

16 instructions challenged here) comports with the requirements of the Fifth Amendment.

17      The only authority that defendant cites that would hold to the contrary is Judge Kozinski's dissent

18 from the withdrawn Navarro-Vargas panel opinion.  In that opinion, Judge Kozinski argued that the

19 Navarro-Vargas majority and the Adams panel opinion on which it relied erred in their interpretation of

20 Marcucci, the first Ninth Circuit case to consider the constitutionality of the challenged instructions.  See

21 Navarro-Vargas, 367 F.3d at 900 (Kozinski, J., dissenting).  The Adams court cited Marcucci for the

22 proposition that the model charge "[does] not misstate the constitutional role and function of the grand

23 jury," Adams, 343 F.3d at 1027 n.1, a statement that the Navarro-Vargas majority characterized as

24 reading Marcucci to hold that "the model charge did not impermissibly infringe upon the grand jury's

25 independent exercise of its discretion." Navarro- Vargas, 367 F.3d at 898.  Judge Koziniski took issue

26 with this broad reading of Marcucci, asserting that "[a] court cannot declare a grand jury instruction

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

8

1   constitutional en gross and immunize it from all future constitutional challenges." Navarro-Vargas, 367 F.3d

2   at 900 (Kozinski, J., dissenting).

3   Thus, observing that "Adams cited Marcucci without explication or elucidation," Judge Kozinski concluded

4   that the decision of the Adams panel "can be read no more broadly than Marcucci itself." Id.

5          Whatever merit Judge Kozinski's argument might have in the abstract, it is unclear how it can

6   possibly be relevant to the adjudication of the motion that is now before this court.  It cannot be seriously

7   disputed that the Marcucci court considered the challenged passage of the model charge in its entirety and

8   approved it without qualification, see 299 F.3d at 1159, 1164-65, and whatever lingering doubt that may

9   have remained regarding the scope of Marcucci's holding was conclusively resolved by Adams.  Thus,

10  because those Ninth Circuit decisions carry the weight of binding precedent, this court must follow

11  Marcucci and Adams and uphold the validity of the jury instructions challenged here.  The court therefore

12  denies defendant's motion to dismiss on this final ground.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   CONCLUSION

2        For the reasons set forth above, the court DENIES defendant's motion to dismiss.

3

4        IT IS SO ORDERED.

5   Dated: May 16, 2005                              /s/
                                                MARILYN HALL PATEL
6                                               District Judge
                                                United States District Court
7                                               Northern District of California

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ENDNOTES**

2   1.  However, it should be noted that section 1326(d) sets forth procedures by which a defendant can
collaterally attack the validity of the deportation order that gives rise to a possible conviction for illegal
3   reentry.  8 U.S.C. § 1326(d).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

11